**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANK FATO,** | : | **CIVIL ACTION NO. 1:07-CV-1291** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **VARTAN NATIONAL BANK,** | : | |
| **VARTAN FINANCIAL CORP., and** | : | |
| **CENTRIC BANK** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Frank Fato ("Fato") brings this retaliatory discharge action

pursuant to the whistleblower provision of the Financial Institutions Reform,

Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1831j.  Presently

before the court is a motion to dismiss Fato's complaint (Doc. 20), filed by

defendants Vartan National Bank, Vartan Financial Corporation, and Centric Bank

(collectively "the defendants").  For the reasons that follow, the motion will be

denied.

I.    **Statement of Facts**[1]

Fato was hired as president and chief executive officer of defendant Vartan

National Bank ("VNB") on August 4, 2004.  (Doc. 1 ¶ 9.)  At the time, VNB was

organized as an insured depository institution under the Federal Deposit Insurance

Corporation Act, 12 U.S.C. §§ 1831a-1835a.[2]  (Id. ¶ 36.)  Defendant Vartan Financial

Corporation ("VFC"), a bank holding company, owned VNB.  (Id. ¶ 6.)  On May 20,

2005, Fato renewed his contract, extending his term of employment with VNB to

March 31, 2008.  (Id. ¶¶ 11-12.)

In late June 2005, representatives from the Office of the Comptroller of the

Currency ("OCC") met with several VNB board members in a private meeting.  (Id.

¶ 27.)  Fato was not present at this meeting.  (Id.)  Later in the day, however, Fato

met with an OCC representative and expressed several concerns regarding VNB's

corporate governance.  (Id. ¶ 29.)  Fato purportedly explained that Robert DeSousa

("DeSousa"), the executive vice president, secretary, and general counsel of the

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint.  See infra Part II.  The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

[2] Several investors purchased VNB at some point after the alleged adverse employment action that is the focus of this lawsuit.  VNB's name was then officially changed to Centric Bank.  (See Doc. 1 ¶ 34.)

Vartan Group[3] ("VG"), was actively interfering with Fato's management of VNB and pressuring him to prioritize issues that Fato felt were not VNB priorities. (Id.) Fato allegedly disclosed: (1) DeSousa's demand that Fato reallocate bank assets so that VNB might acquire authority to exercise trust powers; (2) DeSousa's directive instructing Fato to remove a member of the VNB board without cause; (3) DeSousa's request that VNB absorb the cost of health benefits for employees working for VG subsidiaries; and (4) DeSousa's attempt to sell VNB to an outside party without informing Fato. (See id. ¶ 29.)

According to the complaint, Fato spoke with VNB board member Donnie Enders ("Enders") later that day, recounting his conversation with the OCC representative. (Id.; see also Doc. 21 at 7.) On July 18, 2005—approximately three weeks after his disclosures to the OCC—the VNB board of directors terminated Fato's employment. (Doc. 1 ¶ 32.) The board conveyed its decision to Fato via discharge letter, which ambiguously referenced "performance issues" as justification for the board's action. (Id. ¶ 33.) DeSousa signed the letter. (Id.)

Fato commenced the instant action on July 16, 2007. (Id.) He alleges that his termination constitutes an act of unlawful retaliation under the Financial

---

[3] Vartan Group is a holding company that owned both VFC and VNB at the time of the events in question. (Doc. 1 ¶ 7.) Fato initially named Vartan Group as a defendant in the above-captioned matter, but it was dismissed from the action by the order of court dated June 16, 2008. (See Doc. 27.)

Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1831j.[4]   (Id. ¶¶ 35-41.)  On May 16, 2008, defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (See Doc. 20 ¶¶ 7-8.)  The motion has been fully briefed and is ripe for disposition.

## II.   **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

---

[4] Fato's complaint also sought relief under the Pennsylvania Wage Payment and Collection Law, 43 PA. CONS. STAT. § 260.5.  However, Fato voluntarily dismissed that claim in subsequent pleadings.  (See Doc. 25 at 2 n.1.)

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Twombly, 550 U.S. at ---, 127 S. Ct. at 1965 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at ---, 127 S. Ct. at 1965). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

III.   **Discussion**

Section 1831j of Title 12 of the United States Code offers a right of relief to employees of insured depository institutions when they provide certain information to federal banking agencies and thereafter suffer employment-related retaliation. The statute provides, in pertinent part, as follows:

> No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee . . . provided information to any Federal banking agency or to the Attorney General regarding - -
>    (A)   a possible violation of any law or regulation; or
>    (B)   gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;
> by the depository institution or any director, officer, or employee of the institution.

§ 1831j(a)(1).  A plaintiff need not supply tangible evidence of specific violations of federal law in order to receive statutory protection; rather, an employee simply must provide information regarding *possible* unlawful activity to a statutorily-defined "Federal banking agency." Id.; see also Haley v. Fiechter, 953 F. Supp. 1085, 1092-93 (E.D. Mo. 1997) (explaining that the "provided information" requirement does not require a plaintiff to furnish "evidence of specific violations of

any specific law or regulation").[5]  The OCC is defined as an applicable "Federal

banking agency" for purposes of the statute.  § 1831j(e).

Section 1831j imports the legal burdens of proof applicable to the

Whistleblower Protection Act ("WPA"), 5 U.S.C. § 1221(e)(1).  See § 1831j(f).  A

plaintiff proceeding under the WPA must demonstrate that (1) he or she disclosed

information (2) that was a "contributing factor" in the adverse personnel action

upon which the claim of action is focused.  See § 1221(e)(1); see Lippert v. Cmty.

Bank, Inc., 438 F.3d 1275, 1278-79 (11th Cir. 2006).  "A contributing factor means

any factor which alone, or in connection with other factors, tends to effect, in any

way, the outcome of the decision."[6]  Haley, 953 F. Supp. at 1094.  The WPA specifies

that a plaintiff may satisfy the "contributory factor" test "through circumstantial

evidence, such as evidence that . . . (A) the official taking the personnel action knew

of the disclosure; and (B) the personnel action occurred within a time such that a

reasonable person could conclude that the disclosure was a contributing factor in

---

[5] The court's independent research reveals a paucity of published case law
considering § 1831j, and this fact may explain why the parties' submissions cite only
a single case in which § 1831j was discussed as a plausible right to relief.  (See Doc.
21 at 8 (citing Rouse v. Farmers State Bank of Jewell, Iowa, 866 F. Supp. 1191 (N.D.
Iowa 1994); Doc. 25 at 3-4 (same)).

[6] The prima facie burden under the WPA is significantly lower than that
applicable to a Title VII retaliation claim.  The WPA plaintiff must simply "establish
that his or her whistle-blowing was 'a contributing factor' in [the] adverse
employment action[]" whereas a Title VII plaintiff must "demonstrat[e] 'a causal
connection' between engaging in protected activity and [the] adverse employment
action[]."  Rouse, 866 F. Supp. at 1208.

the personnel action." § 1221(e)(1).  After plaintiff satisfies his or her prima facie

requirements under § 1221(e)(1), the "burden of *persuasion* shifts to the defendant

to demonstrate by the high standard of clear and convincing evidence that it would

have made the same employment decision in the absence of plaintiff's disclosures."

<u>Rouse</u>, 866 F. Supp. at 1208; <u>see also</u> § 1221(e)(2) (requiring an evidentiary

demonstration of "clear and convincing evidence" by a defendant); <u>Lippert</u>, 438

F.3d at 1279 (explaining that a defendant must "articulate, by clear and convincing

evidence, a legitimate, non-discriminatory reason for the [employment action]").

In the action *sub judice*, Fato alleges that he engaged an OCC representative

in private conversation, during which he raised several concerns regarding

DeSousa's alleged interference in VNB's corporate management.  (<u>See</u> Doc. 1 ¶¶ 29-

30.)  Fato avers that he specifically discussed DeSousa's efforts to facilitate VNB's

cost absorption of health benefits for non-VNB employees; DeSousa's attempt to

remove a VNB board member as a political favor and without cause; and DeSousa's

demand that Fato reallocate VNB assets so that the bank might acquire trust

powers.  (<u>Id.</u> ¶ 29.)  Accepting these averments as true, Fato's allegations implicate

the types of disclosures protected by § 1831j.  <u>See</u> § 1831j(a)(1)(B) (describing

protected disclosures as those regarding "gross mismanagement, a gross waste of

funds, an abuse of authority, or a substantial and specific danger to public health or

safety").

Furthermore, at this juncture, Fato's complaint contains enough factual matter to suggest that the disclosures were a contributing factor leading to his subsequent termination.  Soon after Fato spoke to the OCC representative, he met with VNB board member Enders.  (Doc. 1 ¶ 30.)  Fato claims that he recounted to Enders "the conversation he [Fato] had with the OCC representative, and that Mr. Fato felt that it was his fiduciary responsibility to let the OCC know what obstacles VNB faced from elements of its board."  (Id.)  Thus, at least one VNB board member expressly knew of Fato's disclosure to the OCC.  Three weeks after Enders acquired this knowledge, the VNB board met and voted to terminate Fato's employment.  (See Doc. 1 ¶ 32.)  Fato's circumstantial evidence, coupled with the reasonable inferences one may draw therefrom, sufficiently demonstrates that the board—through Enders—"knew of the disclosure" to the OCC representative.  See § 1221(e)(1)(A); see also Lippert, 438 F.3d at 1281-82 (requiring circumstantial

evidence that the "decision-maker" knew of the employee's protected disclosure).[7]

Additionally, the three-week time gap between Fato's disclosure and his

termination falls "within a period of time such that a reasonable person could

conclude that the disclosure was a contributing factor" in the adverse employment

action.  See § 1221(e)(1)(B).

The court finds that Fato has satisfied his prima facie case under § 1831j.

The burden of persuasion thus shifts to the defendants, who must marshal clear

and convincing evidence that they would have made the same employment decision

in the absence of Fato's disclosures.  Obviously, this shifting burden contemplates

issues for discovery and Rule 56 motions and, potentially, trial.  Consequently,

Fato's allegations are sufficient to state a cognizable claim for relief and the court

must deny defendants' motion to dismiss.

---

[7] Defendants argue that "there are no plausible facts which demonstrate that a majority of the Board members knew of Fato's disclosures to the OCC representative prior to terminating his employment." (Doc. 21 at 8.)  Section 1831j does not require direct evidence of the board's knowledge; circumstantial evidence of knowledge is sufficient.  See § 1221(e)(1).  Circumstantial evidence is defined as "a preponderance of probabilities according to the common experience of mankind."  Fedorczyk v. Caribbean Cruise Lines, LTD., 82 F.3d 69, 74 (3d Cir. 1996) (quoting Bornstein v. Metro. Bottling Co., 139 A.2d 404, 411 (N.J. 1958)).  Based upon the limited record before the court in this procedural context, the court finds it sufficiently probable that Enders shared with his fellow board members his awareness of Fato's disclosure prior to the board's employment-terminating vote. Moreover, the face of Fato's complaint certainly contains "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the VNB board's collective knowledge.  See Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at ---, 127 S. Ct. at 1965).

**IV.**   **<u>Conclusion</u>**

For the foregoing reasons, defendants' motion to dismiss (Doc. 20) plaintiff's

complaint (Doc. 1) will be denied.

An appropriate order will issue.


   <u>S/ Christopher C. Conner</u>
CHRISTOPHER C. CONNER
United States District Judge


Dated:        January 6, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANK FATO,** | : | **CIVIL ACTION NO. 1:07-CV-1291** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **VARTAN NATIONAL BANK,** | : | |
| **VARTAN FINANCIAL CORP., and** | : | |
| **CENTRIC BANK** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 6th day of January, 2009, upon consideration of defendants'

motion to dismiss (Doc. 20) plaintiff's complaint (Doc. 1), and for the reasons set

forth in the accompanying memorandum, it is hereby ORDERED that the motion to

dismiss (Doc. 20) is DENIED.


      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge